(315 P.3d 261)

No. 107,631

STATE OF KANSAS, *Appellee*, v. TOMAS ACEVEDO, *Appellant*.

Opinion filed November 22, 2013.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Brian R. Sherwood*, assistant county attorney, *Susan Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., ARNOLD-BURGER, J., and BUKATY, S.J.

ARNOLD-BURGER, J.: Tomas Acevedo was advised by a manager and assistant manager at the Wal-Mart store in Garden City that he was not authorized to return to any Wal-Mart store. Two years later he returned to the same Wal-Mart store and committed a theft. He was convicted of aggravated burglary and theft. He raises several issues on appeal. First, he claims that the evidence presented at trial was insufficient to establish that he entered Wal-Mart without authorization. Because we find that the evidence was sufficient, this claim of error fails.

Next, Acevedo also raises three instructional errors and contends that the cumulative effect of these errors deprived him of a fair trial. First, he claims that court erred in failing to instruct the jury that aggravated burglary requires the State to prove that Acevedo knew he was unauthorized to enter Wal-Mart. We find that even if the requested instruction was both legally and factually sound, in light of the facts and the instruction that was given, the failure to give the requested instruction was harmless. Next, Acevedo claims the district court erred in failing to provide a limiting instruction regarding the jury's use of evidence that he had committed crimes or had been involved in alleged criminal conduct in the past. Acevedo's counsel not only failed to request such an instruc-

tion, but when asked by the trial judge counsel denied that one was needed. So that claim also fails. Third, Acevedo urges this court to find that the use of the word "any" in the last sentence of the burden of proof instruction given by the trial court permitted the jury to convict him of the charged crimes without finding that the State proved *each* of the required elements beyond a reasonable doubt. But in *State v. Herbel*, 296 Kan. 1101, 1123-24, 299 P.3d 292 (2013), our Supreme Court rejected an identical argument, and we are duty bound to follow the Supreme Court.

Finally, we find that where there was no error there can be no cumulative error. Affirmed.

## FACTUAL AND PROCEDURAL HISTORY

In April 2009, Daniel Fetty, a co-manager/shift manager of the Garden City Wal-Mart, and Aaron Kentner, an assistant manager at the same store, approached Acevedo in the store and read him a "Notification of Restriction from Property" form provided by Wal-Mart, which Fetty and Kentner referred to as a trespass form. Fetty read the form to Acevedo as Kentner explained it to him. The form, which was admitted into evidence, read:

"Pursuant to law, Wal-Mart Stores, Inc. chooses to exercise its right to restrict entrance to individuals who have conducted themselves in a manner which is not acceptable to the community, including, but not limited to, shoplifting or destruction of property. It is deemed that the undersigned apprehended subject poses a threat to the future security of Wal-Mart facilities and properties, and therefore, is no longer welcome on Wal-Mart property, within its stores, or on any property under its immediate control. The undersigned apprehended subject is now on notice that should he / she choose to ignore this revocation of invitation and enter onto any Wal-Mart property, he / she places himself / herself in the position to be charged with Criminal Trespass pursuant to § 21-3721 of the Kansas Statutes Annotated. It is not necessary that the undersigned apprehended subject be caught in an illegal act, including, but not limited to, shoplifting or destroying property; the mere presence of such individual on the property is sufficient.

### *Acknowledgement*

"*I,* ___[Thomas Acevedo]___ *understand that as of the* _[18]_ *day of* ___[April]_ , _[2009]_ , *I have been banned from all Wal-Mart property, and that to enter onto any such property places me at risk for arrest and prosecution for Criminal Trespass pursuant to § 21-3721 of the Kansas Statutes Annotated.*" (Bracketed portions were handwritten by Fetty.)

Kentner then summarized the content of the form by telling Acevedo that he was no longer allowed on any Wal-Mart property. Fetty asked Acevedo to sign the form but did not offer Acevedo a copy of the form. Fetty testified that he would have made Acevedo a copy if Acevedo had requested one. Acevedo became angry, refused to sign the form, shouted some vulgar comments, and immediately left the store. The record does not disclose the reason Wal-Mart revoked Acevedo's general permission to enter the store.

Nearly 2 years later, in February 2011, Kentner saw Acevedo in the same Garden City Wal-Mart and called the police to have Acevedo arrested for criminal trespass. Acevedo noticed Kentner and left the store before the police arrived.

On March 26, 2011, Acevedo again entered the Garden City Wal-Mart with two companions, while the store was open for business. They visited the sporting goods department before moving to the tool aisle. Acevedo pulled a grinder wheel—valued at $2.88—from the shelf, removed a box cutter from his pocket, and cut the package to remove the wheel. He pocketed the wheel, moved two aisles into the paint section, and discarded the wheel packaging. Acevedo then walked to the front of the store, passing the registers without stopping to pay for the wheel, and exited the store. Britt Fairbank and Jimmie Garcia, Wal-Mart security officers, confronted Acevedo just outside the store. Fairbank told Acevedo, " 'Tomas, I need you to stop.' " Acevedo replied, " 'I got nothing, man,' " and continued to walk away. Acevedo entered a car located in front of the store, and he left the parking lot in the car. Garcia called the police.

After Acevedo was arrested the next day, he admitted that he had taken the wheel from its package but claimed that he had deposited the wheel in the pharmacy department before leaving the store. When asked about the trespass warning, Acevedo said he knew nothing about it.

The State charged Acevedo with aggravated burglary and misdemeanor theft. Following a short trial on September 21, 2011, the jury convicted Acevedo of both counts. Acevedo filed a motion for new trial, alleging error in Jury Instruction No. 3. He also filed a motion for a downward dispositional and durational departure

sentence. At sentencing, the court denied both motions and sentenced Acevedo to serve a controlling term of 114 months in prison.

Acevedo filed a timely notice of appeal.

## Sufficiency of the Evidence

Acevedo first challenges the evidence supporting his conviction for aggravated burglary. As defined by K.S.A. 21-3716, aggravated burglary is "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony, theft or sexual battery therein."

When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, an appellate court examines the evidence and adopts reasonable inferences drawn from the evidence in a light most favorable to the State to determine whether a reasonable juror could conclude beyond a reasonable doubt that the defendant committed the offense in question. See *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012).

Focusing on the "without authority" element of the statute, Acevedo raises two arguments in support of his position that the aggravated burglary conviction cannot stand on the evidence presented at trial. First, he claims that Wal-Mart's notification form was ineffective to revoke his implied authorization, as a member of the general public, to enter the store during normal business hours. Second, Acevedo contends that, even if the notification was sufficient, the State failed to present sufficient evidence that Acevedo was aware that his authority to enter Wal-Mart had been revoked.

### The notification was legally adequate.

Initially noting that a store generally extends an implied authorization to members of the public to enter its building to shop, Acevedo cites statutes from many other jurisdictions that exclude buildings open to the public at the time of entry from the statutory definition of burglary or provide specific direction regarding the revocation of the implied authority. These foreign statutes are of limited value since they contain different language than the Kansas

aggravated burglary statute. See *State v. Hall*, 270 Kan. 194, 202, 14 P.3d 404 (2000) ("We note the cases cited from those jurisdictions provide little support for the State's position because their burglary statutes are significantly different from the Kansas burglary statute."). The Kansas aggravated burglary statute contains no language that excludes from its purview a building generally open to the public, if entry into that building is unauthorized. See *State v. Vinyard*, 32 Kan. App. 2d 39, 41-42, 78 P.3d 1196 (2003) (without directly addressing the authority issue, court affirmed conviction for aggravated burglary when the defendant reentered a Dillard's store after being instructed not to return on prior occasions), *rev. denied* 277 Kan. 927 (2004); *State v. Fondren*, 11 Kan. App. 2d 309, 316, 721 P.2d 284 (affirming conviction for aggravated burglary premised upon entry into a school building during school hours with the intent to steal because the defendant was not a member of the class of persons authorized to enter the school), *rev. denied* 240 Kan. 805 (1986); *State v. Adams*, No. 106,935, 2013 WL 4046396, at *5 (Kan. App. 2013) (unpublished opinion) (affirming evidence supporting aggravated burglary conviction where the defendant was previously told not to return to any Dillon's store), *petition for rev. filed* September 9, 2013; *State v. Moler*, No. 98,221, 2008 WL 4416035, at *2-3 (Kan. App. 2008) (finding sufficient evidence to support conviction for aggravated burglary when the defendant entered a Wal-Mart store with the intent to steal after previously being informed that he was not allowed to enter any Wal-Mart store), *rev. denied* 288 Kan. 835 (2009).

Acevedo then contends that, if Kansas law permits revocation of implied authorization to enter a public building, Wal-Mart's revocation of Acevedo's implied authorization in this case was ineffective because the revocation notice provided was legally deficient in three respects: (1) the notification was ambiguous because it did not designate a length of time that Acevedo would be prohibited from entering the store; (2) the State presented no evidence of Fetty's and Kentner's authority to ban Acevedo from Wal-Mart; and (3) the notification applied only to "the undersigned" and Acevedo never signed the form. These arguments all fail.

First, the notification was not ambiguous because it failed to specify a length of time for which Acevedo would remain excluded from Wal-Mart properties. The implied authority to enter a store's premises is a species of license the owner of the property—in this case, Wal-Mart Stores, Inc.—extends to members of the public in order to transact business. See *Dulchevsky v. Solomon*, 136 Wash. 645, 650, 241 P. 19 (1925) ("There could be no question that Joseph Solomon, having charge of the store in which the tort was committed, had the right to withdraw the invitation held out to the public generally to enter the store, and revoke that license at any time as to any individual, and eject such individual, if he refused to leave when requested . . . ."). The notification clearly imposed an indefinite revocation of Wal-Mart's implied invitation to Acevedo to enter its stores, the implication being that Acevedo could never enter a Wal-Mart store until he was given express authority to do so. There is nothing ambiguous about an absolute revocation of a license to enter upon property. See *Gilman v. Blocks*, 44 Kan. App. 2d 163, 171, 235 P.3d 503 (2010) ("A license may be created by parol and is generally revocable at the will of the owner of the land in which it is to be enjoyed, by the death of the licensor, by conveyance of the lands to another, or by whatever would deprive the licensee of doing the acts in question or giving permission to others to do them."); 25 Am. Jur. 2d, Easements and Licenses § 117, pp. 611-12 ("A license in real property is the permission or authority to engage in a particular act or series of acts upon the land of another without possessing an interest therein. It is a personal, revocable, and unassignable privilege, conferred either by writing or parol.").

Second, while Acevedo contends that the State failed to establish that Fetty and Kentner had the authority to ban Acevedo from entering all Wal-Mart properties, we find that the record does not support Acevedo's position. Fetty testified he was co-manager of the Wal-Mart store in Garden City when he banned Acevedo from returning and Kentner was his assistant manager. Kentner testified that his responsibility included "security issues" among other things. At no time during the trial, closing arguments, or posttrial motions did Acevedo challenge the authority of Fetty or Kentner

to ban him from Wal-Mart properties. And the reason is clear. Fetty and Kentner, acting as agents of the corporation, could clearly revoke Acevedo's license to enter the Garden City store they managed. See *Lewis v. Montgomery Ward & Co.*, 144 Kan. 656, 660, 62 P.2d 875 (1936) ("[A] store owned by a corporation must be conducted through its agents, that such agents must not only be responsible for seeing that the merchandise to be sold is offered for that purpose and when sold the consideration received, but for seeing that the merchandise is not rendered unsalable by the acts of the customers, and that it is not stolen by shoplifters and thieves."); *Dulchevsky*, 136 Wash. at 650. Whether their authority extended to Wal-Mart stores nationally is a question for another case. Acevedo did not seek to enter a different Wal-Mart store but returned to the store at which he had previously been banned.

Third, Acevedo points out that the notification form, by its terms, applied only to the "undersigned" and he never signed the form. While true, this argument seeks to place form above substance and is ultimately unavailing. The form clearly indicated that the notification applied to Acevedo. Kentner testified that the entire form was read to Acevedo. Acevedo was given the opportunity to sign the form, but he refused. Acevedo was identified in court as the person to whom the notification was given. Clearly, the notification was sufficient to inform Acevedo that his authority to enter the store had been revoked; the fact that the document was not signed by Acevedo goes to the weight of the evidence, not its admissibility. A signed document would have provided more probative evidence that Wal-Mart had communicated its revocation of Acevedo's implied license to enter the store than the mere testimony of its managers. This does not mean the communication was ineffective without the signed document.

Even if the notification form was invalidated as the result of one or more of Acevedo's arguments, the State produced evidence that Acevedo was orally advised that he was no longer welcome in any Wal-Mart property. There is no requirement in the aggravated burglary statute or otherwise that a person receive written notice of revoked authority to enter a particular building. Kansas caselaw

supports an opposite conclusion. See, *e.g.*, *Fondren*, 11 Kan. App. 2d at 316 (finding that authority to enter a building may be express or implied and may depend on the character of the building); *Adams*, 2013 WL 4046396, at *5 (oral notice of rescission, if proved, was sufficient to revoke general authority to enter store). This is consistent with general principles of license; a license is generally revocable at any time, and oral notice of the creation and/or termination of the license is adequate. See 25 Am. Jur. 2d, Easements and Licenses § 117, p. 612. Accordingly, this argument also lacks merit.

*There was sufficient evidence that Acevedo knew that his authority to enter the store had been revoked.*

Assuming that we find Wal-Mart's notification legally valid, Acevedo alternatively argues that the State presented insufficient evidence that Acevedo was aware that his authority to enter the store had been revoked. Again, the appellate record fails to support Acevedo's assertion.

Taken in a light most favorable to the State, the evidence showed that Fetty read the written notification to Acevedo and that Kentner told Acevedo that he was no longer welcome on any Wal-Mart property. Acevedo's response to the notification is circumstantial evidence of his comprehension. He became angry, refused to sign the form, uttered some "vulgar" comments, and immediately left the store. Acevedo's behavior upon seeing Kentner in the store in February 2011 provides further circumstantial evidence of Acevedo's understanding that he lacked authority to enter the store— he immediately exited the store, avoiding contact with Kentner. A conviction may be supported in whole or in part on circumstantial evidence. See *State v. Suter*, 296 Kan. 137, 150, 290 P.3d 620 (2012). Collectively, this evidence is sufficient to lead a rational juror to conclude that Acevedo was aware on March 26, 2011, that his implied authority to enter the store had been revoked.

INSTRUCTIONAL ERRORS

*The district court did not err in refusing to specifically instruct the*

*jury that aggravated burglary requires the State to prove that Acevedo knew he was unauthorized to enter Wal-Mart.*

Next, Acevedo contends that the district court committed reversible error in using PIK Crim. 3d 59.18 instead of his proposed jury instruction. The instruction at issue, Instruction No. 3, provided:

"In Count One, the defendant is charged with aggravated burglary. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant knowingly entered into or remained in a structure located at 3101 East Kansas Avenue, Garden City, Kansas, belonging to Wal-Mart.

"2. The defendant did so without authority.

"3. The defendant did so with the intent to commit a theft therein.

"4. At the time there were human beings in the Wal-Mart store.

"5. This act occurred on the 26th day of March, 2011, in Finney County, Kansas."

At trial, Acevedo requested an alteration to the foregoing PIK instruction that would add "did unlawfully, feloniously, knowingly and without authority" to each of the five elements. Acevedo emphasized the need to instruct the jury to find that he *knew* he lacked authority to enter the premises, but insisted that the additional language be appended to all five elements. Acevedo now contends that the jury instruction given at trial did not require that the jury consider whether he knew his entry into Wal-Mart was unauthorized, foreclosing on his opportunity to present his unawareness as a defense.

Although the use of PIK instructions is not required, it is strongly recommended, as those " ' " 'instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions.' " ' " *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009). Absent a particular need under the facts of a case to alter or add to the PIK instructions, they should be followed. 289 Kan. at 67.

When considering a challenge to a jury instruction, an appellate court must undergo a multistep analysis. *State v. Plummer*, 295 Kan. 156, 160-63, 283 P.3d 202 (2012). First, the court must consider the reviewability of the issue and whether the party chal-

lenging the instruction met the statutory requirements for objecting to a jury instruction. 295 Kan. at 160-61. Next, the court must determine whether the instruction is legally appropriate, including whether the instruction "fairly and accurately state[s] the applicable law." 295 Kan. at 161. If the instruction is legally appropriate, the court must next consider whether it is also supported by the facts of the case. 295 Kan. at 161. Finally, if the instruction is both legally and factually sound and the district court failed to provide that instruction, the appellate court must consider whether the error in failing to give the instruction is harmless. 295 Kan. at 162.

Here, Acevedo requested adding the phrase "did unlawfully, feloniously, knowingly and without authority" to all five elements of the PIK instruction. Adding this phrase to each of the five elements is clearly not legally sound. The term "unlawfully" fails to add any legal concept that is not already addressed by the present elements. Similarly, adding "feloniously" to the instruction is unnecessary because it refers only to the penalty for the commission of aggravated burglary and is irrelevant to the jury's determination of guilt. The addition of "knowingly" to some of the elements runs contrary to the law—Acevedo was not, for instance, required to know that people were present in the building. See *State v. Watson*, 256 Kan. 396, 401, 885 P.2d 1226 (1994). Because Acevedo's proposed instruction was not legally sound, the district court did not err in refusing it. See *Plummer*, 295 Kan. at 161.

However, Acevedo emphasized at the time that he requested the altered instruction that the jury was required to find that he *knew* he lacked authority to enter Wal-Mart. Although his suggested alteration included other words, Acevedo adequately preserved his request to include the word *knowingly* in element 2— that is, the element addressing that Acevedo acted without authority. As such, the request to include *knowingly* in the instruction will be analyzed according to *Plummer*.

As the question regarding reviewability has been answered, we must first consider whether the inclusion of the word *knowingly* is legally sound. This court has only once fully considered a challenge to the absence of the word *knowingly* in PIK Crim. 3d 59.18. In *Moler*, the defendant challenged the PIK instruction, arguing that

his unauthorized entry into a Wal-Mart could not "be inferred from his criminal intent and that he must have known he did not have authority." 2008 WL 4416035, at *4. Utilizing a clearly erroneous standard, this court determined that the instruction as written was appropriate because it "mirrored the PIK instruction and set out the statutory elements for aggravated burglary." 2008 WL 4416035, at *5. Based on this and the "overwhelming evidence" of the defendant's guilt, the court affirmed the district court verdict. 2008 WL 4416035, at *6-7. But under the facts of this case, the addition of the word *knowingly* before the phrase *without authority* does not necessarily make Acevedo's *requested* instruction legally unsound. In fact, we find such an instruction would have been legally sound here.

Next, we turn to whether Acevedo's suggested instruction was factually sound. Because Acevedo's primary defense was based on whether he knew that his entry into Wal-Mart was unauthorized, we will assume the requested instruction was factually sound.

Finally, if the instruction is both legally and factually sound and the district court failed to provide that instruction, the appellate court must consider whether the error in failing to give the instruction is harmless. *Plummer*, 295 Kan. at 162. Our Kansas Supreme Court has determined that, in order to find an error harmless, a court must be able to declare that the error "did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). When the error implicates a statutory rather than a constitutional right, the party benefiting from the error must persuade the court that "there is no reasonable probability that the error affected the trial's outcome in light of the entire record" for it to be deemed harmless. *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012). We find in this case that the failure to give the requested instruction was harmless for the following reasons.

*The PIK instruction that was given was also legally sound.*

The instruction that was given in this case, PIK Crim. 3d 59.18, was both legally and factually sound. The instruction mirrored the

statutory language and properly set out the elements of aggravated burglary. In fact, the PIK instruction's separation of the elements *knowingly enter* and *without authority* perfectly mirrors the statutory language in K.S.A. 21-3716, which separates those same terms with the word *and*. Additionally, the lack of the word *knowingly* in front of *without authority* in the statutory language implies that the legislature intended for *without authority* to remain unmodified; if the legislature thought the addition of the word *knowingly* was necessary, it likely would have added it as it did before the word *enter*. See K.S.A. 21-3716.

Moreover, the word authority necessarily imbues the actor with an element of knowledge or awareness. Authority is defined as "[t]he right or permission to act." Black's Law Dictionary 152 (9th ed. 2009). When one acts without authority, then, he or she necessarily lacks the right or permission to perform that action. Embedded in this idea of permission is some level of knowledge; even if the permission is merely implied, the actor is aware of that permission through the surrounding circumstances (such as knowing he or she may enter a business during its regular hours in order to conduct business transactions). See *State v. Hall*, 270 Kan. 194, 202, 14 P.3d 404 (2000). It is this implicit connection between the concept of authority and knowledge that renders the dissent's concern about secret lists banning people from retail establishments unpersuasive: a reasonable jury could and likely would find a secret revocation of authority or permission insufficient to convict. Jury instructions should be examined through a prism of common sense and reasonableness, not remote, unrelated, or highly improbable hypotheticals. If the jury in this case had found that Acevedo was unaware that his authority to enter Wal-Mart had been revoked or that the revocation itself was ineffective, it could not have found he was without authority to enter because he would have still retained permission to be on the premises. In short, Acevedo's knowledge of the ban is naturally linked to whether his entry into Wal-Mart on the day he was arrested was permissible.

Because the suggested addition of the word *knowingly* adds nothing to the existing instruction and does not presently modify the words *without authority* as found in K.S.A. 21-3716, the ad-

dition of the word *knowingly* to modify *without authority* is not required to make the existing PIK instruction legally sound. PIK Crim. 3d 59.18. It is legally appropriate as is. The additional language requested is unnecessary surplusage. Because the instruction given did not vary in substance from the one requested, it was harmless for the court to refuse the requested instruction.

*The instruction that was given did not limit defenses available to Acevedo so it was also factually sound.*

The State notes in its brief that, in addition to correctly stating the elements of aggravated burglary, the PIK instruction that was given in this case did not limit the defenses available to Acevedo. Acevedo devoted much of his closing argument to whether he knew that his entry into Wal-Mart was unauthorized. The district court, at one point, did admonish Acevedo for using the phrase *knowingly did so without authority* in his closing argument, but that admonition did not foreclose Acevedo's ability to raise the issue of his knowledge: he pointed out discrepancies in testimony by the State's witnesses, challenged their recollection on certain issues, and noted the lack of tangible evidence regarding the ban.

Additionally, this court has already determined that the evidence presented at trial sufficiently proved each element of the crime charged, including the one regarding Acevedo's lack of authority to enter Wal-Mart. The notification was read to Acevedo and another individual also summarized it for him. Acevedo reacted strongly and refused to sign the document, an indicator that he understood it. In February 2011, Acevedo fled Wal-Mart after noticing the man who banned him from Wal-Mart in 2009. Acevedo also fled Wal-Mart in March 2011 despite maintaining to security officers and the police that he had not taken anything from the store. The circumstances and behaviors leading up to Acevedo's arrest hardly lend themselves to an innocent construction. We cannot conclude that the instruction given could have caused any confusion in the minds of the jurors. Accordingly, we find that there is no reasonable probability that the district court's refusal to add the word *knowingly* to the jury instruction affected the trial's outcome.

In sum, although it may not be error based upon the facts of a case to insert the term *knowingly* in front of the phrase *without authority* in the PIK instruction for aggravated burglary, the failure to do so does not render the PIK instruction erroneous as a matter of law. See *State v. Herbel,* 296 Kan. 1101, 1124, 299 P.3d 292 (2013) (holding that even though the reasonable doubt instruction given in the case was not the preferred instruction, it was not a misstatement of the law and therefore was legally appropriate). Under the facts of this case, any error in refusing Acevedo's requested instruction was harmless.

*The district court did not err in failing to give a limiting instruction regarding the use of prior-bad-act evidence.*

Acevedo further claims the district court erred in failing to provide a limiting instruction regarding the jury's use of evidence that he had committed crimes or been involved in alleged criminal conduct in the past. He acknowledges that the instruction was not requested and, accordingly, argues for application of a clearly erroneous standard of review. The procedural hurdle to appellate review of this issue is greater than Acevedo proposes. Acevedo did not merely fail to request a limiting instruction; he affirmatively represented that he wanted no limiting instruction given.

At the instructions conference in this case, the district court addressed both parties and asked, "Do you have any other requested instructions at all? *Do we have any limiting instructions we need* or any lesser includeds or anything of that sort?" (Emphasis added.) Both parties responded in the negative. Acevedo's decision not to request a limiting instruction cannot form the basis of an appellate issue when the district court complied with his request not to give the instruction. See *State v. Hargrove,* 48 Kan. App. 2d 522, 532-34, 293 P.3d 787 (2013) (discussing application of invited error rule to jury instructions and noting that a criminal defendant is generally bound by the strategy decisions of counsel); *Adams,* 2013 WL 4046396, at *9 (Atcheson, J., dissenting) ("Adams would have been entitled to a limiting instruction, but defense counsel reasonably could have concluded an instruction would only have called attention to the evidence and the impermissible inference."). Under the

invited error doctrine, an appellate court will not consider claims of error prompted or invited by the appellants before the district court. See *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011); *Hargrove*, 48 Kan. App. 2d at 531. Accordingly, we decline to review this issue.

*The district court did not erroneously instruct the jury on the State's burden of proof.*

Next, Acevedo challenges the district court's reasonable doubt instruction. The challenged instruction, Instruction No. 2, provided:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you **have** a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you **have no** reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty."

Acevedo contends that the use of the word "any" in the last sentence of the instruction permitted the jury to convict him of the charged crimes without finding that the State proved *each* of the required elements beyond a reasonable doubt. But Acevedo acknowledges that he did not object to the instruction at trial. Accordingly, appellate review of the challenged reasonable doubt instruction is necessarily circumscribed by Acevedo's failure to object to the instruction at trial. See K.S.A. 22-3414(3); *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

Nevertheless, the Kansas Supreme Court has ruled that instructions identical to the challenged instruction here were not clearly erroneous. See *State v. Waggoner*, 297 Kan. 94, 98-99, 298 P.3d 333 (2013); *Herbel*, 296 Kan. at 1123-24. Our Supreme Court found that the use of the word "any" in the last sentence of the jury instruction did not create any confusion and was legally appropriate. Moreover, if any confusion did occur it was cleared up by the jury instructions that set out the individual elements for each of the crimes charged, which all contained the following lan-

guage: " 'To establish this charge, *each* of the following claims must be proved.' " 296 Kan. at 1123.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Ottinger,* 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). *Herbel* was reaffirmed in *State v. Smyser,* 297 Kan. 199, 205, 299 P.3d 309 (2013). *Herbel* is dispositive of Acevedo's argument. The district court's use of this burden of proof jury instruction was legally appropriate and Jury Instruction No. 3 regarding the individual elements of aggravated burglary included the following language: "To establish this charge, each of the following claims must be proved." Therefore, the district court did not err when it gave the above jury instruction on the State's burden of proof.

The instruction was not clearly erroneous and, accordingly, this claim of error also fails.

## CUMULATIVE ERROR

Acevedo argues that, even if each of alleged errors was not sufficient alone to demand reversal, the cumulative effect of the errors deprived him of a fair trial and constituted a basis for granting him a new trial. The difficulty with Acevedo's position is that he has not successfully established any error. "Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted.]" *State v. Cofield,* 288 Kan. 367, 378, 203 P.3d 1261 (2009). Because Acevedo's alleged errors do not constitute errors, then the cumulative error doctrine does not apply in his case.

Affirmed.

*     *     *

ATCHESON, J., dissenting: The jury instruction on aggravated burglary used in this case didn't require the State to prove that Defendant Tomas Acevedo *knew* he lacked authority to enter the Wal-Mart store in Garden City—an essential component of the crime. The jury heard conflicting evidence on Acevedo's knowledge. The flaw in the instruction, therefore, deprived Acevedo of

a fair trial. I respectfully dissent from the majority's decision to affirm that conviction. I would reverse and remand for a new trial.

The legal error here replicates the one another panel recently addressed in *State v. Adams*, No. 106,935, 2013 WL 4046396 (Kan. App. 2013) (unpublished opinion). I adhere to my dissent in *Adams* outlining the substantive deficiency in the aggravated burglary instruction common to these cases and to the pattern criminal instructions. See PIK Crim. 3d 59.18; PIK Crim. 4th 58.130. As stated in the instruction here, the second element of the offense simply requires the jurors to find that Acevedo entered or remained in the Wal-Mart without authority. It doesn't inform the jurors that Acevedo had to know he was without authority, even though that must be the law. And it effectively renders irrelevant Acevedo's legally proper defense that he didn't know he had been banned from Wal-Mart property. Based on the instruction, the jurors could have (and should have) convicted Acevedo even if they believed he had never been informed of his placement on a Wal-Mart list of banned persons.

Defendants' actual knowledge of their lack of authority seldom comes up in the run of aggravated burglary prosecutions. When defendants break into locked office buildings or enter homes to which they have no connection, the circumstantial evidence of lack of authority is overwhelming. That evidence typically will be augmented with testimony from the owners that the defendants had no authority to be inside. Defendants wisely contest the charges in other ways. So in those cases, lack of authority simply isn't of any moment.

But that's not true if the alleged crime entails entering a store or other commercial premises during normal business hours. At those times, members of the public are not only allowed to enter, they're encouraged to do so. They have a generally granted authority to enter and remain in those places except for limited areas otherwise obviously off limits, such as secured offices or locations clearly designated for employees only. To convict someone of aggravated burglary for walking into a store during business hours with the requisite bad intent to commit a theft or other crime, the State must prove that the general authority extended to the public

has been rescinded as to that defendant in particular. And the rescission of authority must have been communicated to the defendant before he or she enters the premises. Otherwise, people could be placed on secret "lack of authority" lists maintained by stores and successfully prosecuted for aggravated burglary without knowing their actions would violate that statute. But people must have fair notice in advance that their conduct may subject them to criminal penalties. See *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939) (A criminal statute is "repugnant" to due process requirements if it fails to "inform[] as to what the State commands or forbids," and, thus, offends " 'ordinary notions of fair play . . . .' "); *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002) (statute criminalizing trafficking in contraband in penal institution gives fair notice only when administrator of particular facility clearly makes known what items are forbidden).

And that is the vice of the aggravated burglary instruction in this case—it relieves the State of the obligation to prove that Acevedo knew the general authority afforded members of the public to enter Wal-Mart no longer applied to him. The second element of the instruction should have informed the jurors that "the defendant did so [entered or remained] *knowing* he was without authority" or words to that effect. The defect was accentuated by the language in the first element requiring that the jurors find Acevedo "knowingly entered" the store. The juxtaposition of those elements effectively told the jurors they could convict if Acevedo deliberately went into the store whether or not he understood he had been banned from the premises, so long as he actually had been so banned. That is, what Acevedo knew or understood bore on and was part of the first element but not the second element. The district court's spontaneous objection to defense counsel's closing argument on this point only compounded the problem in this case.

The majority's analysis effectively ignores the problem posed in aggravated burglary prosecutions when the defendant enters a store during business hours with the intent to shoplift. For starters, the majority parses the statutory language of the aggravated bur-

glary statute, K.S.A. 21-3716, and announces the legislature didn't intend the word "knowingly" to modify the phrase "without authority." Probably not, the way the statute has been drafted. (That begs the question of exactly what the legislature meant to communicate by saying the crime requires "knowingly . . . entering into or remaining within any building . . . or other structure." It would be the exceedingly rare burglar who would *unknowingly* go into a building. But the peculiarity of that phrasing is another matter altogether.) The instructional defect has nothing to do with how "knowingly" bonds with the other statutory language. It has everything to do with how businesses open to the public operate and how they afford fair notice to individuals who are unwelcome there.

Store owners grant broad authority to the public at large to enter their buildings during announced business hours to browse and (hopefully) buy. The owner grants that authority generically to all comers simply by holding the premises open rather than by explicitly bestowing it on or denying it to each individual approaching the front doors. Acevedo is clothed with that permission or authority, as am I. And we continue to enjoy that authority until it is taken away.

If we were to shoplift $3 items while covered by the general authority to enter the store, we would be guilty of theft, not burglary. Part of the burden for the State in prosecuting shoplifting-as-burglary cases is to prove the general authority to enter stores did not apply to the particular defendant it has charged. Fundamental criminal law principles of fair notice and due process—not the statutory language of K.S.A. 21-3716—require proof that the defendant in the dock knew he or she no longer enjoyed that authority afforded the general public. The State, therefore, must prove the store owner communicated rescission of that general authority to the particular defendant. In turn, the jury instruction on aggravated burglary must reflect that required proof and convey to jurors that they should acquit if the State fails to show the defendant was "without [that] authority." In other words, the instruction must reflect the requirement that the defendant know he or she no longer enjoyed the general authority to enter the store uni-

versally conveyed to the public collectively. The instruction in this case did not.[*]

[*]The decision in *State v. Rush*, 255 Kan. 672, 877 P.2d 386 (1994), neither addresses nor controls the issue here. In that case, the court discussed the statutory language and the related elements of both criminal trespass and burglary in concluding the former is not a lesser include offense of the latter. 255 Kan. at 678. Although the court looked at authority under each offense, it ultimately concluded that criminal trespass required proof of other elements not required to prove burglary (and by necessary extension aggravated burglary). So criminal trespass could not be a lesser included offense. The *Rush* court did not consider the fair notice issue bound up with authority when a charged aggravated burglary involves entry of a store or other commercial enterprise during usual business hours. The defendant in *Rush* broke into a locked store after it had closed for the day.

The majority tries to bolster its position by imputing an "embedded," if obscure, connotation of authority or permission as implying "some level of knowledge." Just how that salvages the jury instruction on aggravated burglary isn't especially clear. Here, the State had to show that the general authority or permission to enter a store during business hours had been taken away from Acevedo and that he *knew* it had been taken away. Wal-Mart simply couldn't silently rescind that authority as to Acevedo. But the jury instruction doesn't convey Wal-Mart's obligation to communicate to Acevedo its decision to ban him from company property.

The majority seems to suggest a person can't be without authority if he or she doesn't know that an earlier grant of authority has been withdrawn. And, more to the point here, the jurors in this case would understand as much from the aggravated burglary instruction. The majority's position fails on both counts. For example, a general contractor might authorize the subcontractors on a construction job to charge the cost of materials at a particular building supply store with which the general contractor has credit arrangements and discounted pricing. The subcontractors understand the process and order materials accordingly. The general contractor, however, comes to suspect one subcontractor has been padding its supply lists, so the general contractor tells the supply store not to accept any more job orders from that subcontractor. But the general contractor doesn't immediately inform the sub-

contractor. I think it unlikely anyone could reasonably say the subcontractor retained authority to charge supplies in that situation based on some connotative meaning of the word "authority." I think it equally unlikely jurors in this case would somehow impute principles of fair notice to the aggravated burglary instruction and, therefore, conclude they ought to acquit if they had so much as a reasonable doubt that Acevedo had not been told to stay out of the Wal-Mart.

The majority confidently predicts jurors will invariably discern an "implicit connection" between authority and knowledge that nowhere appears in the elements instruction. And, thus enlightened, those jurors will correctly apply the law governing aggravated burglary. The majority's supposition, of course, supports my fundamental point that a defendant must know he or she lacks authority to be convicted, but it then simply refuses to recognize the reality that jurors need to be expressly informed of that point. Jury instructions fail of their purpose if they "omit[] words that may be essential to a clear statement of the law." *State v. Torres*, 294 Kan. 135, 147, 273 P.3d 729 (2012). Suggesting—as I do—that the elements instruction on aggravated burglary rely on explication rather than implication seems to be grounded in both common sense and reasonableness.

Finally, the majority appears to submit that the aggravated burglary instruction in this case is acceptable because it "mirrors" PIK Crim. 3d 59.18 and PIK Crim. 4th 58.130 in stating the elements of aggravated burglary. Plainly, the district court was hesitant to tinker with the language of the pattern instruction. And I agree district courts ought to be reticent to do so. At the same time, however, PIK instructions carry no legal presumption of correctness. Compare *State v. Huckleberry*, 823 S.W.2d 82, 86 (Mo. App. 1991) (Missouri pattern jury instructions held "presumptive correct"). The PIK elements instructions on aggravated burglary weren't written to address authority in the unusual context of an accused shoplifter purportedly banned from the store. In that context, authority becomes especially significant. If the State can prove lack of authority along with the other elements of aggravated burglary, what would otherwise typically be a misdemeanor theft also

supports a level 5 person felony. The difference in potential punishment is remarkable. And, as I have pointed out, the factual circumstances on authority differ materially from typical burglary cases involving forced entry or places not normally open to the public—for which the pattern instruction was drafted.

In short, the elements instruction on aggravated burglary was legally insufficient because the crime, in this situation, hinges on a defendant entering a store in a manner inconsistent with the merchant's authorization or permission to the general public. When the defendant simply walks in during business hours, the State must show the defendant knew he or she no longer enjoyed that authorization or permission. The instruction fails to allow jurors to acquit if they hold a reasonable doubt about the defendant's knowledge.

The evidence on Acevedo's lack of authority was in conflict. Two managers at the Garden City Wal-Mart testified that about 2 years before this incident, they told Acevedo he was banned from all Wal-Mart property and he would be subject to criminal prosecution if he entered a company store. Wal-Mart's business practice is to obtain signed acknowledgments from persons banned from company property. Wal-Mart could not produce an acknowledgment from Acevedo. The managers testified they presented one to him but he refused to sign it. At trial, the State introduced evidence that after this incident, Acevedo told law enforcement officers he knew nothing about being banned from the Garden City Wal-Mart or any other locations. Although Acevedo did not testify at trial, his statement to police put authority and notice directly at issue.

During closing argument, Acevedo's lawyer began to explain to the jurors that to convict they had to find Acevedo went into the store knowing he lacked authority to do so. Without an objection from the State, the district court interrupted the lawyer and told him not to argue " 'knowingly' " with respect to any element of aggravated burglary except the first, dealing with entering or remaining rather than with authority. The district court's admonition was brief and somewhat elliptical. But the jurors reasonably could have inferred that whether Wal-Mart informed Acevedo he had been banned or lacked authority to enter the store amounted to a

legal irrelevancy. The district court's remark accentuated the flaw in the elements instruction.

As the majority correctly concludes, Acevedo's trial lawyer sufficiently raised and preserved an objection to the aggravated burglary elements instruction on the grounds it failed to properly inform the jurors that Acevedo had to know he lacked authority to enter the Wal-Mart. The issue was a central part of Acevedo's defense. There was sufficient evidence to support the defense as a matter of law. The resolution of the defense pitted the credibility of the Wal-Mart managers as to what they said they told Acevedo nearly 2 years earlier, on the one hand, against what Acevedo told the police at the time of this incident, on the other. Those credibility determinations rest within the province of the jurors as factfinders. The jurors could have called it either way. If they entertained a reasonable doubt that Acevedo had been told he was banned from Wal-Mart, they should have acquitted him of the aggravated burglary.

But, as I have said, the elements instruction improperly allowed the jurors to convict without having to decide the issue. The second element effectively informs the jurors they should convict even if Acevedo had not been informed Wal-Mart no longer extended to him the blanket authority it gave the public generally to enter the store.

If the instructional error nonetheless did not materially prejudice Acevedo, the aggravated burglary conviction should be affirmed. The proper standard for reviewing the harmlessness of this instructional error is open to debate. The instruction withdraws the defendant's knowledge of lack of authority from the jurors' consideration. As a result, the jury did not have to find a material part of the substantive offense had been proven. If a jury instruction fails to include an element of the offense, the error compromises the defendant's right to trial by jury protected in the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. See *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *State v. Linn*, 251 Kan. 797, 802, 840 P.2d 1133 (1992). It, therefore, erodes a fundamental constitutional right. The United States Supreme Court has recog-

nized that error may be harmless only if the omitted element were "uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 17. The Kansas Supreme Court adopted that standard in *State v. Richardson*, 290 Kan. 176, 182-83, 224 P.3d 553 (2010). The test for harmlessness, then, is twofold. Not only must the evidence bearing on the omitted element approach the irrefutable, a defendant effectively has to concede that component of the charged crime. Neither is true here. While the evidence favoring the State's position on notice of lack of authority quite arguably appears stronger than Acevedo's, it cannot be viewed as irrefutable on the appellate record, from which credibility determinations simply cannot be drawn. See *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008) ("One of the reasons that appellate courts do not assess witness credibility from the cold record is that the ability to observe the declarant is an important factor in determining whether he or she is being truthful."). Acevedo not only declined to concede the issue, he based his defense on it.

Under that standard, the error could not be dismissed as harmless. The conviction would have to be reversed, and the case remanded for a new trial on aggravated burglary charge.

The parties, however, did not argue review that way. They applied the standard outlined in *State v. Plummer*, 295 Kan. 156, 160-63, 283 P.3d 202 (2012), and that's how the majority addresses it. The *Plummer* court set out a multistep test to determine if the failure to give a requested instruction on a lesser included offense amounts to reversible error—a statutory defect under K.S.A. 22-3414(3). 295 Kan. at 160. But the court plainly contemplated the test would be used to assess other instructional errors, including constitutional defects. 295 Kan. at 162-63 (court cites standards from *Ward* for harmlessness of constitutional and nonconstitutional errors). The court has so adapted the *Plummer* test. See *State v. Cox*, 297 Kan. 648, 662, 304 P.3d 327 (2013) (applied to requested instruction on character evidence); *Foster v. Klaumann*, 296 Kan. 295, 301-02, 294 P.3d 223 (2013) (applied to instructions on standard of care and professional judgment in medical malpractice action). It isn't entirely clear to me that the *Plummer* test would supplant the constitutionally based analysis applicable when

the jury is not instructed on a material element of an offense, so much as the governing criteria from *Neder* would be folded into the test.

I agree with the majority that Acevedo preserved the issue, the initial step in the *Plummer* test. For the reasons I have outlined, language that Acevedo knew he was without authority to enter the Wal-Mart store was both legally appropriate and factually supported for inclusion in the second element of the aggravated burglary instruction. Those are next two steps in the *Plummer* test. As to the final step, I part ways with the majority's determination that the error was harmless here, even viewing it as a statutory one. In *Plummer*, the court found the proper test for reversible error in failing to give an instruction on a lesser included offense to be whether "there is a 'reasonable probability that the error . . . did affect the outcome of the trial in light of the entire record.'" 295 Kan. at 168 (quoting *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 [2011], *cert. denied* 132 S. Ct. 1594 [2012]). As the party benefiting from the error, the State has the burden to demonstrate there was no such probability. *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012). With errors affecting criminal convictions, a reasonable probability standard requires the reviewing court to conclude that the "likelihood" of a different verdict "undermines confidence in the outcome of the trial," a threshold less substantial than finding a different verdict to be "more likely than not." *Smith v. Cain*, 561 U.S. ___, 132 S. Ct. 627, 630, 181 L. Ed. 2d 571 (2012) (*Brady* violation); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (habeas corpus review for prejudice based on ineffective assistance of counsel).

The instructional error requires reversal of Acevedo's conviction even measured by the reasonable probability standard. And, as I have indicated, a good argument can be made for the far more stringent constitutional error standard.

Without belaboring what I have already said, there was diametrically conflicting testimonial evidence on notice of Acevedo's ban from Wal-Mart. We shouldn't and really can't sort out that conflict on appeal because it turns on credibility determinations heavily

informed by courtroom observation available to the factfinders but wholly missing from an appellate record. Acevedo's version is, to some extent, supported by the absence of a signed acknowledgement. The Wal-Mart managers have an explanation, but that, too, should be for the factfinders to evaluate. The State and the majority mention the testimony from one of the managers as to Acevedo's supposedly furtive behavior in the Wal-Mart store about a month before this incident as corroborating the communication of the ban some 2 years earlier. Although that testimony was unrebutted in the sense Acevedo didn't deny being in the store then, the implication to be drawn from his purported behavior at that time is neither unequivocal nor overwhelming. It, too, depends upon the credibility of the Wal-Mart manager's description of Acevedo's actions.

Factfinders could go either way in evaluating the evidence bearing on authority, especially because it largely rests on credibility. Accordingly, the State has failed to negate the reasonable probability that a properly instructed jury would have acquitted Acevedo of the aggravated burglary charge. I would, therefore, reverse the conviction and remand for a new trial.