NOT DESIGNATED FOR PUBLICATION

No. 114,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TREY LATTRELL CAMPBELL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Riley District Court; DAVID L. STUTZMAN, judge. Opinion filed June 17, 2016. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*:  Trey Lattrell Campbell was convicted by a jury of aggravated robbery and conspiracy to commit aggravated robbery. He appeals arguing that the district court erred in two of the instructions that were given to the jury and that his constitutional rights were violated when he was ordered to register as a violent offender under the Kansas Offender Registration Act. We find no error and affirm his convictions.

1

The facts relevant to this appeal are straightforward. Campbell asked Angel Romero, a high school student, if Romero knew anyone that was vulnerable enough for Campbell to rob. Romero told Campbell that Ayrton Weiss and Hudson Philip sold marijuana and that he believed neither would put up much of a fight if Campbell were to rob them. Romero then introduced Campbell to Weiss over the phone, and Campbell set up a time to buy marijuana at Philip's apartment on July 10, 2014.

On the day of the marijuana buy, Campbell called his longtime friend, Ty Suggs, and asked Suggs if he wanted to participate in a robbery. Suggs agreed. Romero picked up Campbell and Suggs and took them to Philip's apartment.

At trial, Weiss, who received immunity from prosecution in exchange for his testimony, testified that when Campbell and Suggs arrived, Philip and Austin Waters were also at the apartment. According to Weiss they got marijuana out and smoked some. Campbell then pulled out a pistol and pointed it at Philip. Weiss testified that Campbell said, "'I'm going to have to take this.'" Weiss testified that he stood up, at which point Campbell pointed the gun at him and asked him where he thought he was going. At that point, Suggs pulled up his shirt and showed that he had a gun on his hip, so Weiss sat back down. Campbell and Suggs gathered up the marijuana and, as they left, Campbell said that if they told anyone about this he would "'show you what I'm really about.'"

Weiss testified that Campbell and Suggs stole approximately 14 ounces of marijuana. Weiss described Campbell's gun as a palm-sized pistol that he believed was either "a 22 or a 9 mm," and that it looked real.

Suggs testified at trial as well. According to Suggs, once they were in Philip's apartment, they talked for a little while before the marijuana was brought out. At that point, Suggs testified that Campbell flashed his gun, but did not point it at anyone, and said that they were "going to need whatever you got." Suggs testified that his own gun

2

"fell out of [his] pocket," and one of the people in the apartment saw it. Suggs testified that the people in the apartment gave them all the marijuana and that he and Campbell left the apartment.

Philip also testified at trial. According to Philip, Weiss approached him and asked him if he would sell marijuana to Campbell. Philip said that Campbell and Suggs arrived at his apartment around noon on July 10, 2014. Once inside, Philip produced 13 ounces of marijuana so that Campbell could see what was going to be sold, and they smoked some of the marijuana. Philip asked for $2,200 for the 8 ounces of marijuana that Campbell wanted to buy. According to Philip, at that point Campbell pulled out a gun, pointed it at Philip's ribcage and said, "[Y]eah about that." Philip said he pushed everything forward so Campbell could take it. Philip also testified that Weiss stood up and that Suggs stood up and showed a weapon. Philip stated that Campbell then took all the marijuana and left the apartment, stating that if they said anything about what had just happened, "[Y]ou will see what I'm really about." Philip described Campbell's gun as a silver and black palm-sized semiautomatic handgun.

In addition to those involved in the robbery, Cooper Tanner (a friend of Campbell) testified that Campbell asked to borrow his gun. Tanner loaned Campbell a silver and black Jimenez .380 semiautomatic pistol. Tanner testified that Campbell returned the gun after a couple of hours and that when Campbell returned the gun, he had approximately a quarter pound of marijuana with him. Tanner later decided that he did not want the gun and gave it to a friend, who apparently threw the gun off a bridge.

Campbell did not present any evidence at trial.

The jury found Campbell guilty of aggravated robbery and conspiracy to commit aggravated robbery. Campbell was then notified of his duty to register under the Kansas Offender Registration Act.

On May 26, 2015, the district court denied Campbell's posttrial motions and his departure motion and sentenced him to 66 months' imprisonment. The district court also ordered Campbell to register as a violent offender, finding that Campbell had been convicted of a felony that was committed with a deadly weapon. Campbell filed a timely notice of appeal.

Campbell raises three issues on appeal: (1) that it was error for the district court to instruct the jury that it "should" convict Campbell if it found that the State had proved all elements of the offenses beyond a reasonable doubt; (2) that it was error for the district court not to have instructed the jury on the lesser included offense of robbery; and (3) that it was error for the district court to have ordered Campbell to register as a violent offender without having a jury determine whether he used a deadly weapon in the commission of the aggravated robbery. Each issue will be addressed in turn.

*Was it error for the district court to instruct the jury that it "should" find Campbell guilty if it found the State had proven all elements of the offenses beyond a reasonable doubt?*

At the close of evidence in this case, the district court gave a jury instruction modeled after PIK Crim. 4th 51.010, which included the following language: "If you have no reasonable doubt about the truth of each of the claims that the State must prove, you *should* find the defendant guilty." (Emphasis added.) Campbell did not object to this instruction at trial.

Campbell argues on appeal that the use of the word "should," as opposed to the word "may," was legally inappropriate because it directed the jury to find Campbell guilty if the elements of the offenses had been proved beyond a reasonable doubt. According to Campbell, the instruction given by the district court took away the jury's power of nullification.

4

Our standard of review when addressing challenges to jury instructions proceeds in stages:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

Because Campbell failed to object to this instruction at trial, we can only reverse if the instruction was clearly erroneous. K.S.A. 22-3414(3). To determine if the instruction is clearly erroneous, we use a two-step process. First, we must decide whether there was any error at all by considering whether the instruction was both legally and factually appropriate, employing unlimited review of the entire record. Second, if we find error, we must decide whether we are firmly convinced that the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014).

Campbell argues on appeal that the use of the word "should" conveys such a strong sense of duty and obligation that the jury was effectively told that it did not have the ability to exercise the power of jury nullification. Campbell argues that the word "may" ought to have been used because the word "may" advises the jury that it has "the authority to convict a defendant when all of the elements of the crime are proved beyond a reasonable doubt, but does not make any leading suggestion regarding the outcome." Campbell cites *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014), where our Supreme Court held that it was error for the district court to instruct the jury: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the

5

first degree on either or both theories, then you *will* enter a verdict of guilty.'" (Emphasis added.) In that case, the court found that the use of the word "will" came too close to directing a verdict for the State to be acceptable. 301 Kan. at 164. (We note as an aside that the defendant in *Smith-Parker* argued that "should" was the appropriate word to use.) However, the court in *Smith-Parker* also recognized that a defendant is not entitled to an instruction that advises the jury that they have the power of jury nullification. 301 Kan. at 164 (citing *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 [2011]).

In a recent published opinion, another panel of this court rejected the same argument that Campbell makes in this case. *State v. Allen*, No. 112,780, 2016 WL 2609549, at *4-6 (Kan. App. 2016). In *Allen*, the court dealt with the same objection to the same instruction that was given here. The court noted that the instruction at issue is a PIK instruction "developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions." 2016 WL 2609549, at *4. "'Absent a particular need under the facts of the case to alter . . . PIK instructions, they should be followed.'" 2016 WL 2609549 (quoting *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 [2013], *rev. denied* 300 Kan. 1104 [2014]). The *Allen* court concluded that the instruction at issue here struck an appropriate balance between encouraging the jury to follow the proper course of action without forbidding the jury from engaging in jury nullification. 2016 WL 2609549, at *5.

The same conclusion has been reached by other panels of this court in various unpublished decisions. See *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion); *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* February 26, 2016; *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. ___ (February 18, 2016).

6

We are not persuaded to reach a different result in this case. We agree with our colleagues that the word "should" is advisory and that it is not the equivalent of "must" or "will." The instruction given in this case did not direct a verdict for the State. As such, it was not clearly erroneous for the district court to give it.

*Did the district court commit error when it failed to instruct the jury on the lesser included offense of robbery?*

Campbell next contends that the district court erred when it failed to instruct the jury on the lesser included offense of robbery. Because Campbell did not request this instruction at trial, we can only reverse if we find the failure to give this instruction is clearly erroneous. K.S.A. 22-3414(3).

Appellate review of a district court's failure to instruct the jury on a lesser included offense is a two-step process. See *State v. Armstrong*, 299 Kan. 405, 431-33, 324 P.3d 1052 (2014). First, we must determine whether it was legally and factually appropriate to instruct the jury on the lesser included offense. 299 Kan. at 432. If so, we must determine whether the district court's failure to give the lesser included offense instruction warrants reversing the jury's verdict. 299 Kan. at 433. Since Campbell did not request the lesser included offense instruction, we may only reverse the jury's verdict if, after review of the entire record, we are "firmly convinced that the jury would have reached a different verdict" had the jury been instructed on the lesser included offense. 299 Kan. at 433 (citing *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 [2012]). In both steps, our review is unlimited. 299 Kan. at 432-33.

Robbery is defined as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2015 Supp. 21-5420(a). The only difference between robbery and the aggravated robbery with which Campbell was charged is that Campbell's charge required that the robbery be committed

7

by a person who was armed with a dangerous weapon. See K.S.A. 2015 Supp. 21-5420(b)(1). Both parties agree that robbery is a lesser included offense of aggravated robbery. Accordingly, instructing the jury on the offense of robbery would have been legally appropriate. See *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006).

The question then becomes whether an instruction on simple robbery was factually appropriate. In order for a robbery instruction to be factually appropriate, there must be some evidence produced at trial that would support a conviction for robbery. *State v. Story*, 300 Kan. 702, 710, 334 P.3d 297 (2014) (evidence must reasonably justify conviction of the lesser included crime). If, upon review of the evidence produced at trial in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser offense, the district court's failure to give the lesser included offense instruction is error. *Armstrong*, 299 Kan. at 433. Generally, a lesser included offense instruction is appropriate when the evidence supporting the greater charge fulfills the elements of the lesser charge so that the jury could have convicted on the lesser charge "without having its verdict subject to reversal for insufficient evidence." *State v. Haberlein*, 296 Kan. 195, 204, 290 P.3d 640 (2012), *cert. denied* 134 S. Ct. 148 (2013).

Campbell argues on appeal that if he had been convicted of simple robbery based on the evidence produced at trial, "there is no doubt that this Court would have rejected a sufficiency challenge." Campbell's argument elides the fact that all of the witnesses present at the robbery who testified at trial stated that Campbell used a gun in the robbery. Weiss testified that Campbell pulled a pistol and pointed it at Philip and him. Philip testified that Campbell pulled a gun and pointed it at him. Suggs, Campbell's accomplice, testified that Campbell flashed his gun. Not a single witness who was present during the robbery claimed that Campbell was not armed with a dangerous weapon. Campbell did not offer any evidence in his case in chief, electing to defend against the charge by attacking the credibility of the witnesses who testified against him.

8

Instructing the jury on robbery as a lesser included offense of aggravated robbery is not required in cases where a defendant simply denies that he participated in the crime and no evidence is presented which would show that a dangerous weapon was not used in the robbery. *State v. Sutherland*, 248 Kan. 96, 102, 804 P.2d 970 (1991); see *State v. Mitchell*, 234 Kan. 185, 189-90, 672 P.2d 1 (1983). That is the circumstance presented in this case. There was no evidence presented that would have allowed the jury to reach the conclusion that if Campbell committed the robbery, he did it without the use of a dangerous weapon. Because no evidence was presented that would have supported a conviction for simple robbery, the district court committed no error in failing to instruct the jury on robbery as a lesser included offense of aggravated robbery.

*Was it error for the district court to have ordered Campbell to register as a violent offender without having a jury determine whether he used a deadly weapon in the commission of the aggravated robbery?*

Finally, Campbell argues that the district court violated his Sixth and Fourteenth Amendment rights under the United States Constitution by ordering him to register as a violent offender when it made the factual finding that he committed the aggravated robbery with a dangerous weapon. Campbell argues that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the issue of whether he used a deadly weapon should have been determined beyond a reasonable doubt by the jury.

This issue has been decided adverse to Campbell by our Supreme Court in *State v. Petersen-Beard*, 304 Kan. 192 Syl. ¶ 1, ___ P.3d ___ (No. 108,061, filed April 22, 2016) (postrelease registration mandated by the Kansas Offender Registration Act does not constitute punishment for purposes of applying the provisions of the United States Constitution). We are duty bound to follow the precedent of our Supreme Court. *State v. Vrabel*, 301 Kan. 797, 809, 347 P.3d 201 (2015). Accordingly, we must conclude that the district court did not violate Campbell's constitutional rights by requiring him to register as a violent offender under the Kansas Offender Registration Act.

9

Affirmed.