NOT DESIGNATED FOR PUBLICATION

No. 114,658

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS TOLAND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed February 17, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*David Belling*, assistant county attorney, *Natalie Randall*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*: The State of Kansas charged Nicholas Toland with several crimes, including burglary and conspiracy to commit burglary. Before proceeding to trial, Toland filed a motion for an order in limine to prevent all witnesses from discussing his criminal history. The District Court of Ford County granted Toland's motion. At trial, a witness for the State briefly alluded to Toland's criminal history. The district court sustained Toland's objection to this testimony. Toland did not ask the court to admonish the jury or for a mistrial at that time. At the end of trial, the district court submitted conspiracy instructions to the jury that excluded the names of Toland's two coconspirators. Neither

1

side objected to these instructions. After the jury found Toland guilty of the crimes charged, he sought a new trial. The district court denied this motion, and Toland appeals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On April 10, 2014, officers of the Dodge City Police Department responded to a report of a burglary in progress. When officers arrived at the scene, they encountered the victim, who stated that he had returned to his home that afternoon and discovered a red SUV parked in his driveway. The victim said that he noticed three men outside his house, two of whom were in the process of removing property from his house. Each of these men was later identified, including the defendant, Toland.

The State charged Toland with burglary of a residence, a severity level 7 person felony in violation of K.S.A. 2015 Supp. 21-5807(a)(1); conspiracy to commit burglary, a severity level 9 person felony in violation of K.S.A. 2015 Supp. 21-5302(a) and K.S.A. 2015 Supp. 21-5807(a)(1); theft, a class A nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5801(a)(1); and criminal damage to property, a class B nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5813(a)(1).

After a 1-day trial, a jury found Toland guilty of burglary, conspiracy to commit burglary, and theft but acquitted Toland on the charge of criminal damage to property. Following trial, Toland made a motion for new trial, which the district court denied. The district court then sentenced Toland to 24 months' probation with an underlying prison term of 35 months and a 12-month postrelease supervision term.

Toland timely filed this appeal.

## DID THE DISTRICT COURT ABUSE IT'S DISCRETION WHEN IT DENIED TOLAND'S MOTION FOR NEW TRIAL?

Toland first contends the district court erred when it denied his motion for new trial. Counsel for Toland filed a motion in limine requesting that the district court issue an order precluding all witnesses from mentioning Toland's criminal history in their trial testimony. At a pretrial hearing, the district court granted this motion and engaged in the following conversation with both parties:

> "[THE COURT:] Okay, and so what you're trying to do is prohibit anybody from saying, well, you know, Mr. Toland's been convicted before, those kinds of statements?
> "[DEFENSE COUNSEL:] Or he was on parole or whatever.
> "[THE COURT:] Okay, and it sounds like, Mr. Spencer, you're not gonna be asking your witnesses. You need to make sure you direct them not to just blurt that out.
> "[PROSECUTOR:] Okay, Your Honor."

The case then proceeded to jury trial, during which the State produced multiple witnesses who testified against Toland. No issue arose regarding the district court's order in limine until the State's direct examination of Kelly Milo. The following exchange took place:

> "[PROSECUTOR:] Okay. And did you know anyone with the last name of Edwards?
> "[MILO:] I did.
> "[PROSECUTOR:] Who was that?
> "[MILO:] Her name was Laquisha Edwards.
> "[PROSECUTOR:] How did you know that person?
> "[MILO:] I had worked with her previously at Pos-T-Vac.
> "[PROSECUTOR:] Did anyone else in the group know her?
> "[MILO:] We had all kinda knew her.
> "[PROSECUTOR:] Did anyone else give you any additional information about her?

3

"[MILO:]  As we kinda all talked, like, that's Laquisha's car, and we kinda came to conclusions of who would be driving her car. It came to that she was dating Nick Toland who had just got out of prison and—

"[PROSECUTOR:]  Let me stop you right there.

"[DEFENSE COUNSEL:]  I would object to that, Your Honor.

"[THE COURT:]  Sustained.

"[PROSECUTOR:]  Later in the day, did someone contact you?

"[MILO:]  Yes.

"[PROSECUTOR:]  And, who was that?

"[MILO:]  Laquisha Edwards."

Defense counsel for Toland did not ask the district court to admonish the jury or move for a mistrial at this point. However, defense counsel moved for mistrial after the State rested arguing: ". . . I will also point out that one of the State's witnesses brought out, contrary to pretrial orders, that [Toland] had recently gotten out of prison, which may cloud the jury's mind." The district judge denied this motion, reasoning,

"The other issue raised by Mr. Toland is that Ms. Milo may have mentioned about Mr. Toland having just gotten out of prison, or whatever. It was mentioned only one time. Neither party emphasized it. It was not elicited pursuant to a question that would have by any way, shape, or form was designed to elicit that type of statement.

"As I remember, Ms. Milo's answer to whatever the exact question was somewhat rambling and went beyond just being—in essence, answering the direct question.

"Therefore, I can't find that there is any misconduct on behalf of the State. No motion for mistrial was made, at that time. Probably for the very reasons I'm stating.

". . . So, the motion is overruled."

Toland focuses on the district court's later denial of his motion for new trial, arguing that Milo's violation of the order in limine violated his opportunity to receive a fair trial. The State argues that Toland is barred from raising this issue on appeal because of the invited error doctrine.

4

*Did Toland Invite the District Court into Error?*

Whether the doctrine of invited error applies is a question of law, over which appellate courts generally exercise unlimited review. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016). Under the invited error doctrine, a party may not invite the error of a court and then complain of that error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). In *Verser*, for instance, the district court specifically asked the defendant if he wanted to motion for a mistrial after cross-examination revealed that the State's witness had lied during his testimony. The defendant declined to move for a mistrial, the trial proceeded, and the jury ultimately found the defendant guilty of the crimes charged. When, on appeal, the defendant argued that the fabricated testimony should have been grounds for a mistrial, the Kansas Supreme Court invoked the invited error doctrine stating: "Because the district judge gave [the defendant] the option of having a mistrial declared, and [the defendant] deliberately chose to continue the trial, we hold that error, if any, was invited." 299 Kan. at 784.

The State here alleges that Toland invited any error arising from Milo's testimony by failing to ask the district court to admonish the jury or move for a mistrial. As the record shows, the State's contention that Toland never made a motion for mistrial is incorrect. Toland raised such a motion after the State rested, and the district court denied the motion. It can only be assumed that the State's argument is that Toland's failure to motion for a mistrial during Milo's testimony constituted invited error.

Although not identical, the facts of *Verser* suggest an absence of invited error in this case. While Toland arguably failed to make a timely motion for mistrial during Milo's testimony, there is no question he made such a motion after the State rested. These actions do not compare to those in *Verser*, where the defendant actively declined the district court's invitation to call for a mistrial. Quite simply, the defendant in *Verser* never

5

requested a mistrial, while Toland did. Especially in the context of a 1-day trial, this conduct does not rise to the level of invited error.

*Did the District Court Abuse Its Discretion by Denying Toland's Motion for New Trial?*

The next issue raised by Toland is whether the district court erred by denying his motion for new trial. "The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." K.S.A. 2015 Supp. 22-3501. Appellate courts will not disturb a district court's decision regarding a violation of an order in limine absent a clear abuse of discretion. See *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

At a motion hearing, the district judge considered, and ultimately denied, Toland's motion for new trial, reasoning,

> "[T]he standard, because it's not a request—it's not being argued under newly discovered evidence, the Motion for New Trial can be granted if the interest of justice requires it. I remember all of this evidence. I remember the trial. I don't see anything that would convince me that the interest of justice would grant—would rise to the level of granting a new trial. So for the purpose of this case, the Motion for New Trial must likewise be denied . . . ."

Although Toland presented several arguments in support of his motion for new trial at the district court level, his appellate brief simply alleges that Milo's violation of the order in limine caused him substantial injustice. The additional arguments raised by Toland before the district court have essentially been abandoned. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (a point raised incidentally in a brief or that is

not argued therein is deemed abandoned). Toland's brief focuses exclusively on Milo's statement during trial that he "had just got out of prison" and argues that a new trial should have been granted by the district court because the statement violated the district court's order in limine and prevented Toland from receiving a fair trial.

When a party alleges that an order in limine has been violated, the district court must determine (1) whether the order has been violated and, if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. *State v. Breedlove*, 295 Kan. 481, 494, 286 P.3d 1123 (2012). The district court is in the best position to determine these issues; its ruling on the matter will not be disturbed absent a clear abuse of discretion. 295 Kan. at 494.

The State readily concedes there was a violation of the order in limine when Milo referred to Toland's criminal history during her trial testimony. Thus, this analysis need only focus on the matter of whether Toland suffered substantial prejudice as a result of the violation. On this score, Toland bears the burden of showing he was substantially prejudiced. *State v. Gleason*, 277 Kan. 624, 640, 88 P.3d 218 (2004).

Toland relies on both *State v. Aikins*, 261 Kan. 346, 932 P.2d 408 (1997), and *Gleason* to support his position that he suffered substantial prejudice when Milo mentioned his criminal history at trial. In his brief, Toland attempts to distinguish this case from *Aikins*, in which the Kansas Supreme Court ruled that two lines of questionable testimony during the course of a 2-week trial did not substantially prejudice the defendant. 261 Kan. at 377. Toland asserts that Milo's relatively minor violation of the order in limine was, comparatively, far more egregious than the violation in *Aikins* because the trial here lasted only 1 day.

*Gleason* does not support Toland's position. In that case, the prosecutor violated an order in limine when he elicited testimony from a witness regarding the defendant's

7

criminal history. The district court denied the defendant's motion for new trial, and the Kansas Supreme Court affirmed. 277 Kan. at 642. Specifically, the court reasoned that the evidence against the defendant was so overwhelming that "there was no likelihood the violation of the order in limine changed the trial result." 277 Kan. at 642. Moreover, the court pointed out that the district court had admonished the jury following the violation and stated: "[W]here the trial court sustains an objection and admonishes the jury to disregard the objectionable testimony, reversal is not required unless the remarks are so prejudicial as to be incurable." 277 Kan. at 642.

Toland's reliance on *Aikins* and *Gleason* is in that both cases found the defendant was not substantially prejudiced in either case. *Aikins*, 261 Kan. at 378 ("If the prejudice is substantial, the trial judge should not hesitate to declare a mistrial. Here, the trial judge did not err in refusing to declare a mistrial."); *Gleason*, 277 Kan. at 642 ("Gleason has not met his burden of showing the prosecutor's error was so prejudicial as to be incurable . . . [c]onsequently, he was not denied his right to a fair trial.").

The State argues *State v. Crowder*, No. 89,190, 2003 WL 22938049 (Kan. App. 2003) (unpublished opinion), as a more factually similar case. There, a witness made a similarly offhand comment regarding the defendant's criminal history, saying, "'Well, he had bought the car for me just before he had got out of jail because I didn't have a car.'" 2003 WL 22938049, at *2. After objecting, defense counsel declined the district court's offer to admonish the jury. This court affirmed the district court's denial of a new trial, reasoning that the witness' answer had a minimal effect on the jury. 2003 WL 22938049, at *3.

The State does little to tie the facts of the present case with its citation to the *Crowder* case and instead attempts to emphasize the overwhelming nature of the evidence presented against Toland at trial. The State points out that a coconspirator testified he agreed that Toland "commit[ted] the burglary with [him]," that "the burglary

[was] his idea," and that Toland drove a red Ford Escape on the day of the crime. The State also notes that further testimony from Toland's girlfriend showed she owned a red Ford Escape on the date of the crime, she had seen Toland that morning, and the SUV outside the victim's house was registered to her name. Additionally, the victim testified he had seen Toland enter a red Ford Escape outside his house. The State argues this evidence is strong enough to mitigate any prejudice Toland might have suffered as a result of Milo's violation of the order in limine.

On this point, the State is correct, especially in the light of the recent cases of *State v. Uhls*, No. 102,771, 2011 WL 135021 (Kan. App. 2011) (unpublished opinion), and *State v. Foos*, No. 108,753, 2013 WL 6164537 (Kan. App. 2013) (unpublished opinion). As with *Gleason*, panels of this court in both *Uhls* and *Foos* noted that the sheer weight of evidence against the defendant negated any potential prejudice from a violation of the district court's order in limine. See *Uhls*, 2011 WL 135021, at *6; *Foos*, 2013 WL 6164537, at *4.

In *Foos*, the defendant argued that the State violated an order in limine when it introduced results of the defendant's breath test. While the *Foos* panel ultimately found the State had not violated the order in limine—and thus did not need to proceed to the question of substantial prejudice—it nevertheless noted that the cumulative evidence against the defendant was so overwhelming "that there was little or no likelihood the prosecutor's violation of the order in limine changed the result of the trial." 2013 WL 6164537, at *4. The panel pointed specifically to "the fact that [the defendant] crashed his car head-on into a tree . . . that officers smelled alcohol on [the defendant's] breath, that [the defendant's] girlfriend made statements to officers that [he] had consumed five or six glasses of wine at dinner and . . . that [the defendant] had failed a field sobriety test." 2013 WL 6164537, at *4.

9

Factually speaking, *Uhls* is practically identical to the present case. There, the district court issued an order in limine forbidding the State from introducing any testimony regarding the defendant's criminal history. However, during trial the following dialogue occurred between the prosecutor and a witness:

> "[PROSECUTOR:] How did you come up with th[e] six color photographs [for the lineup]?
> "[WITNESS:] We have a computer system that is linked to the county jail's photo mug system, and what we do is, like I said, I pulled up [the defendant's] picture—
> "[DEFENSE:] Objection, Your Honor, based upon [Order] in Limine." 2011 WL 135021, at *2.

The district court sustained the objection but decided against admonishing the jury. The jury later found the defendant guilty of robbery. After a motion hearing, the district court denied the defendant's motion for new trial.

On appeal, a panel of this court found that the above statement—as well as the district court's failure to admonish the jury—did not cause substantial prejudice to the defendant. 2011 WL 135021, at *6. The panel pointed out that the eyewitness testimony and DNA evidence presented at trial "was so overwhelming that there was little or no likelihood the prosecutor's violation of the order in limine changed the result of the trial." 2011 WL 135021, at *6. In addition, the panel noted that the violation had occurred only once, was inadvertent, and did not happen again. 2011 WL 135021, at *6.

Applying the rationale of *Gleason*, *Foos*, and *Uhls*, it is clear that Toland was not substantially prejudiced when Milo briefly mentioned his criminal history. As the district court noted in its denial of Toland's motion for mistrial, Milo's testimony was essentially unresponsive to the prosecutor's question. The prosecutor interrupted Milo after she mentioned Toland's criminal history, and the district court sustained the defense attorney's objection. More importantly, the weight of the evidence was strong enough that

10

it mitigated any prejudice that might have arisen from Milo's testimony. Several witnesses placed Toland at the scene of the crime and witnessed him driving a vehicle registered to his girlfriend which was identified as being at the scene of the crime. There is little reason to believe that Milo's minor violation of the motion in limine had any effect on the outcome of Toland's trial.

### DID THE DISTRICT COURT COMMIT CLEAR ERROR WHEN IT FAILED TO INCLUDE THE NAMES OF TOLAND'S COCONSPIRATORS IN ITS INSTRUCTIONS TO THE JURY?

Toland next contends the district court committed clear error in the instructions submitted to the jury at trial. Specifically, Toland argues that the jury instructions were broader than the charging document because the criminal complaint contained the names of Toland's alleged coconspirators, while the jury instruction for conspiracy did not.

Kansas courts follow a multistep analysis when considering challenges to jury instructions:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless . . . .' [Citation omitted.]" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

*Reviewability*

The first step of reviewability concerns whether this court may exercise its appellate jurisdiction and whether the defendant raised any objection to the jury instructions at trial. *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012). Toland

11

does not contest jurisdiction, nor did he object to the jury instructions set forth by the district court at trial. When a party fails to object to jury instructions at trial, but challenges those instructions on appeal, appellate courts review the district court's conduct for clear error. K.S.A. 2015 Supp. 22-3414(3). Thus, Toland "'must firmly convince [this court] that the giving of [a different] instruction would have made a difference in the verdict.'" *State v. Soto*, 301 Kan. 969, 984, 349 P.3d 1256 (2015).

*Legal Appropriateness*

Step two of this analysis considers the legal appropriateness of the jury instruction urged by Toland. That is, the legal appropriateness of a conspiracy instruction that included the names of Toland's coconspirators.

Kansas courts have ruled that "[a] jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous." *State v. McClelland*, 301 Kan. 815, Syl. ¶ 4, 347 P.3d 211 (2015). Generally speaking, the State is bound by the charging document and must exercise caution when conforming jury instructions to the charges. 301 Kan. at 828 (citing *State v. Haberlein*, 296 Kan. 195, 210-11, 290 P.3d 640 [2012]). Courts have explained this requirement, noting that it "permit[s] the development of a defense to meet [the] accusation[s], and . . . protect[s] against conviction based on facts not contemplated in the accusation[s]." *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013).

In the first amended information filed by the State, Count II set forth the charge of conspiracy against Toland, stating:

> "On or about the 10th day of April, 2014 [Toland], within Ford County Kansas, did then and there contrary to the statutes of the State of Kansas *unlawfully and intentionally agree with another person, to wit: Miguel Herrera Jr. and Daniel Herrera*, to commit the crime of Burglary . . . and an overt act in furtherance of the conspiracy was

12

committed, to wit: planning the burglary . . . with Miguel Herrera Jr. and Daniel Herrera, and without authority entered into or remained within a dwelling, with intent to commit a theft therein." (Emphasis added.)

As indicated, the first information specifically named Toland's coconspirators. Toland contends the district court erred when it failed to include these names in jury instruction Nos. 10 and 12. With regard to conspiracy, jury instruction No. 10 reads:

"The defendant is charged with conspiracy to commit burglary. The defendant pleads not guilty.
　　　"To establish this charge, each of the following claims must be proved:
　　　"1.  The defendant agreed with others to commit burglary.
　　　"2.  The defendant did so agree with the intent that burglary be committed.
　　　"3.  The defendant or any party to the agreement acted in furtherance of the agreement by breaking into the residence and stealing items.
　　　"4.  This act occurred on or about the 10th day of April, 2014, in Ford County, Kansas.
　　　"The definition of burglary, the crime charged to be subject of the conspiracy, is as set forth in Instruction No. 8.
　　　"It is not a defense that a person with whom defendant conspired lacked actual intent to commit burglary if the defendant believed the person actually intended to commit the crime." PIK Crim. 4th 53.030.

Jury instruction No. 12 states:

"A conspiracy is an agreement with another or other persons to commit a crime or to assist in the committing a crime, followed by an act in furtherance of the agreement.
　　　"The agreement may be established in any manner sufficient to show understanding. It may be oral or written, or inferred from all of the facts and circumstances." PIK Crim. 4th 53.060.

13

Pointing—albeit briefly—to *McClelland*, Toland argues jury instructions 10 and 12 were broader than the first amended information, and therefore erroneously given. The State counters with the case of *State v. Bedford*, No. 73,208, unpublished opinion filed July 26, 1996. In that case, the defendant argued that the names of coconspirators were a necessary element to any conspiracy charge. A panel of this court disagreed, finding: "[A co-conspirator's] name amounts to an evidentiary fact which the State was not required to set forth in the complaint." Slip op. at 3. Relying heavily on this language, the State argues that *McClelland* is inapplicable in this case because the names of coconspirators are not, in fact, elements of conspiracy.

The State's argument is supported by K.S.A. 2015 Supp. 21-5302(a), which defines conspiracy as: "[A]n agreement with another person to commit a crime or to assist in committing a crime." The Pattern Instructions for Kansas (PIK) lend further weight to the State's argument. Kansas courts have noted that, while not required, use of PIK instructions is strongly recommended, as the instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013). The district court's jury instructions reflect the relevant PIK instructions in all essential respects. The first instruction reads:

> "The defendant is charged with conspiracy to commit [the crime charged]. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "1. The defendant agreed with (another person) (others) to (commit) (assist in the commission of) [the crime charged].
> "2. The defendant did so agree with the intent that [the crime charged] be committed.
> "3. The defendant or any party to the agreement acted in furtherance of the agreement by [description of crime].
> "4. This act occurred on or about the ___ day of _____, ___, in _____

14

County, Kansas.

"The definition of <u>insert crime</u>, the crime charged to be the subject of the conspiracy, is as (follows: _____) (set forth in Instruction No. _____).

"(It is not a defense that a person with whom defendant conspired lacked actual intent to commit [the crime charged] if the defendant believed the person actually intended to commit the crime.)" PIK Crim. 4th 53.030.

The second instruction utilized also by the district court, states the following:

"A conspiracy is an agreement with another or other persons to commit a crime or to assist in committing a crime, followed by an act in furtherance of the agreement.

"The agreement may be established in any manner sufficient to show understanding. It may be oral or written, or inferred from all of the facts and circumstances." PIK Crim. 4th 53.060.

Each of the above PIK instructions lends credibility to the State's assertion that the names of coconspirators are not an element of conspiracy itself. *McClelland* does not apply here.

This conclusion is supported by the recent case of *State v. Jaghoori*, No. 112,920, 2016 WL 4262485 (Kan. App. 2016) (unpublished opinion). In that case, the State charged the defendant with aggravated robbery. The complaint against the defendant described the property taken as "'to wit: a black 1996 Volkswagen Jetta car.'" 2016 WL 4262485, at *3. However, the State dropped this description in its proposed jury instructions and identified the taken property simply as "'property.'" 2016 WL 4262485, at *3. The district court accepted these jury instructions over the defendant's objection, noting that the language was patterned after the relevant PIK. A panel of this court affirmed, ruling that the jury instructions did not include any elements in addition to those provided in the complaint and, thus, were not broader than the charging document. 2016 WL 4262485, at *4.

15

A similar logic should be applied to the present case. Neither K.S.A. 2015 Supp. 21-5302(a), nor the relevant PIK provisions supports the contention that the name of a coconspirator is an element of conspiracy. *Bedford* and *Jaghoori* support a similar finding. Including the names of Toland's coconspirators is not legally required under these circumstances.

*Harmless Error*

Even if the district court erred by not including the names of Toland's coconspirators in its jury instructions, this panel must determine whether that error was harmless. A court error is harmless if it "did not affect a party's substantial rights, meaning it . . . did not affect the trial's outcome." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011).

The sheer weight of evidence against Toland makes it highly unlikely the trial's outcome would have changed had the district court named Toland's coconspirators in the jury instructions. One of Toland's coconspirators testified at trial that he agreed the "burglary [was] [Toland's] idea," that Toland had "commit[ted] the burglary with [him]," and that Toland had driven a red Ford Escape on the day of the crime. Further testimony showed this red SUV belonged to Toland's girlfriend, who saw him on the morning of the crime. Moreover, the victim testified that he saw both this red SUV and Toland outside his residence while the burglary occurred. The record on appeal is, in addition, replete with references to Toland's coconspirators by name. Indeed, during closing arguments the State's prosecutor told the jury, "You've also heard evidence by Mr. [Daniel] Herrera [who] has admitted that he committed this burglary with Mr. Toland."

Regardless of the language of the jury instructions it received, this evidence strongly suggests the jury would have reached the same verdict. Thus, to the extent the district court committed any error, that error was harmless.

Based on the above factors, the district court did not commit clear error when it excluded the names of Toland's coconspirators from its jury instructions.

Affirmed.